**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SIERRA CLUB<br>2101 Webster Street, Suite 1300<br>Oakland, CA 94612,<br><br>   *Plaintiff*,<br><br>   v.<br><br>MICHAEL REGAN, in his official capacity<br>as Administrator of the U.S. Environmental<br>Protection Agency,<br>Mail Code 1101A<br>1200 Pennsylvania Avenue NW<br>Washington, DC 20460,<br><br>   *Defendant*. | Civil Action No. 1:24-cv-1171<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiff Sierra Club brings this civil action for declaratory and injunctive relief pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, seeking to compel Defendant Michael Regan ("Administrator"), in his official capacity as Administrator of the United States Environmental Protection Agency ("EPA") to perform a nondiscretionary duty prescribed by the Act. Specifically, Plaintiff seeks to compel EPA to perform its duty to issue a finding that the State of New York has failed to timely submit a nonattainment state implementation plan as required under part D of Title I of the Clean Air Act.

2. The Clean Air Act requires EPA to establish National Ambient Air Quality Standards ("NAAQS"), which are nationally applicable, health-based standards establishing permissible air concentration levels of six "criteria" air pollutants (including sulfur dioxide) that are known to be harmful to human health and the environment. 42 U.S.C. § 7409.

3. Each state is required to propose a state implementation plan ("SIP"), a collection of regulations that must be reviewed and approved by EPA, adequate to ensure that each NAAQS is "achieved and maintained" throughout the state. *See* 42 U.S.C. §§ 7407(a), 7410. Upon EPA's review and approval of a SIP, its requirements become federally enforceable requirements. 42 U.S.C. § 7413; 40 C.F.R § 52.23.

4. For each NAAQS, EPA is required to promulgate attainment or nonattainment designations for air quality control regions under Section 107, 42 U.S.C. § 7407 of the Clean Air Act. The Administrator is further authorized to modify or revise prior designations of an area's attainment status (after requisite notice to the state), based upon on any available information indicating that such designation should be revised. *Id.* § 7407(d).

5. Maintaining compliance with the NAAQS is crucial because they are health-based standards, and the Clean Air Act is specifically designed to ensure that states remain in attainment for each NAAQS at all times. In the event that an area slips into nonattainment with a NAAQS, the Act establishes a strict schedule of mandatory deadlines intended to force the state to ensure that said area is brought back into attainment as expeditiously as possible. *See generally* 42 U.S.C. § 7502.

6. Areas designated as nonattainment for the $SO_2$ NAAQS are subject to the general nonattainment area planning requirements of Section 172 of the CAA, 42 U.S.C. § 7502, as well as the $SO_2$-specific planning requirements of subpart 5 of part D of Title I of the CAA, 42 U.S.C. §§ 7514 and 7514a.

7. Part D requires that a state submit a nonattainment area plan within 18 months of the effective date of designation of an area as nonattainment with the $SO_2$ NAAQS. 42 U.S.C § 7514(a). Such plan "shall provide for attainment… as expeditiously as practicable but no later

1

than 5 years from the date of the nonattainment designation." *Id.* § 7514a(a). States must provide members of the public an opportunity to comment on the substance of such plans before they are submitted to EPA for review and approval. 42 U.S.C. § 7410(a)(2). EPA is separately required by the Administrative Procedure Act, 5 U.S.C. § 553 *et seq.*, to provide another opportunity for public notice and comment when it proposes to approve a nonattainment plan via rulemaking.

8. The Clean Air Act requires the Administrator of the EPA to issue a "completeness finding"—a determination regarding whether a plan or plan revision meets the minimum requirements for submissions—within 60 days of receipt, and in any case "no later than 6 months after the date, if any, by which a State is required to submit the plan or revision." *Id.* § 7410(k)(1)(B). If a state has failed to submit a required plan, the Administrator is required to issue a finding of failure to submit. If a state has not corrected the deficiency within 18 months of a finding of failure to submit, the Administrator is required to apply gradually escalating sanctions upon the state until such deficiency is corrected. *Id.* § 7509(a).

9. In June of 2010, EPA promulgated a new one-hour primary $SO_2$ NAAQS of 75 parts per billion (ppb). *See* 75 Fed. Reg. 35520 (June 22, 2010).

10. On March 26, 2021, EPA, as a part of the fourth round of area designations for the 2010 $SO_2$ NAAQS, designated (in relevant part) a portion of St. Lawrence County in the State of New York as in nonattainment for the 2010 $SO_2$ NAAQS. *See* 86 Fed. Reg. 16055, 16068 (March 26, 2021). This designation became effective on April 30, 2021. *Id.*

11. Accordingly, New York's nonattainment area SIP plan for St. Lawrence County was due on October 31, 2022, and the Administrator was required to issue a completeness finding for this submission by May 1, 2023, the date "no later than 6 months" after the deadline by which New York was required to submit its nonattainment plan. 42 U.S.C. § 7410(k)(1)(B).

12. New York has not issued any proposed nonattainment plan for notice and comment, and according to EPA's SPeCS Public Dashboard, which is an online dashboard that tracks required SIP plan submissions,[1] New York has not submitted any elements of its required nonattainment plan to EPA. Nor has EPA issued a finding that New York has failed to submit its plan, even though New York's deadline for submitting this plan passed nearly 18 months ago.

13. The Clean Air Act and Administrative Procedure Act require New York and EPA to provide members of the public with multiple opportunities to review and comment upon any nonattainment plans. However, the public cannot review or comment on any requirements until a plan is actually submitted.

14. Further, as discussed above, while the Clean Air Act establishes a schedule of escalating sanctions designed to force a state to timely submit a required nonattainment plan, the clock on this schedule does not actually begin running until EPA issues a completeness finding. 42 U.S.C. § 7509(a). Accordingly, it is critical for EPA to make this finding in a timely fashion in order to ensure that a state submits its plan as expeditiously as possible.

15. The Administrator's delay in issuing a finding of failure to submit thus harms Plaintiff's members and frustrates their ability to ensure that New York submits an adequate nonattainment plan that will ensure St. Lawrence County gets back into attainment with the $SO_2$ NAAQS as quickly as possible. Accordingly, Plaintiff respectfully requests that this Court issue an order: (1) declaring that EPA, through Administrator Regan, was required to issue a completeness finding by May 1, 2023; (2) declaring that the Administrator has failed to perform this non-discretionary duty; and (3) requiring that the Administrator issue said finding immediately.

---

[1] Available at: https://awsedap.epa.gov/public/extensions/specs-element-dashboard/index.html

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(2), which authorizes any person, after providing 60-day notice, to commence a civil action against the Administrator to compel the performance of a nondiscretionary duty under the Act.

17. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (granting district courts original jurisdiction over any action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

18. The relief requested is authorized pursuant to 42 U.S.C. § 7604(a) of the citizen suit provision and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act). The Clean Air Act authorizes this Court to award attorneys' fees and costs of litigation "to any party, whenever the court determines such award is appropriate." 42 U.S.C. § 7604(d); *see also* 28 U.S.C. § 2412 (generally authorizing courts to award costs and attorneys' fees to plaintiffs in civil actions against the United States).

19. Defendant is an officer of the United States acting in his official capacity who official resides within this District, and a substantial part of the alleged events or omissions giving rise to Plaintiff's claims occurred in this District. Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1).

## NOTICE

20. On December 14, 2023, Plaintiff Sierra Club served the Administrator via U.S. Postal Service certified mail (return receipt requested) with written notice of the claims stated in this action and of their intent to file suit after 60 days, as required by 42 U.S.C. § 7604(b)(1)(A)

4

and EPA's regulations governing notice. 40 C.F.R. § 54.2(a) (requiring notice to the Administrator to be served by certified mail). *See* Ex. 1, Notice of Intent Letter & USPS Electronic Return Receipt at page 4. The USPS electronic return receipt indicates the notice was delivered on December 29, 2023. *Id.* at 8.

21. More than 60 days have passed since the Administrator received this notice, and the Administrator has not acted to remedy the violation alleged in this Complaint.

22. Plaintiff has served a copy of the Complaint simultaneously upon the Attorney General of the United States and the EPA Administrator as required by 42 U.S.C. § 7604(c)(3).

## PARTIES

23. Plaintiff Sierra Club is the nation's oldest and largest grassroots environmental organization. The Sierra Club is a national nonprofit organization with 65 chapters and over 670,000 members dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Atlantic Chapter of the Sierra Club has over 40,000 members, including members in St. Lawrence County. Sierra Club and its members are greatly concerned about the effects of air pollution on the environment and human health and have a long history of involvement in activities related to air quality under the Clean Air Act.

24. Sierra Club is a "person" within the meaning of 42 U.S.C. § 7602(e), who may commence a civil action pursuant to the Clean Air Act. 42 U.S.C. § 7604(a). Sierra Club sues on behalf of itself and its individual members, including its members who live, work, travel, and/or recreate in and around the vicinity of the designated nonattainment area. Sierra Club and its

5

members are greatly concerned about the effects of air pollution on human health and the environment and have a long history of participating in activities relating to air quality and NAAQS attainment/nonattainment issues under the Clean Air Act.

25. Neither the claims asserted nor the relief requested require the participation of individual members of Sierra Club in this action.

26. Sierra Club has members who live, work, recreate, travel, and engage in other activities in and around the affected area in St. Lawrence County which EPA has designated in nonattainment with the primary $SO_2$ NAAQS, and are adversely affected by the excess $SO_2$ emissions emitted from the Alcoa Massena primary aluminum smelter facility ("Alcoa Massena"), which is the only large source of $SO_2$ emissions in the area and which EPA and New York have both determined is the cause of nonattainment in the area. These members frequently travel to the Town of Massena, which is within the nonattainment area, for both work and recreation, and worry about the effects of $SO_2$ emissions on their own health and the health of their families when they do so. Excess $SO_2$ emissions emitted from Alcoa Massena threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiff Sierra Club's members, as well as their ability to engage in other activities, such as enjoying the aesthetic qualities and recreational opportunities of the affected areas.

27. Defendant Michael Regan is the Administrator of the Environmental Protection Agency. Administrator Regan is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established by the Act, including the mandatory duty to timely issue a completeness finding under 42 U.S.C. § 7410(k)(1)(B)

28. The Administrator's failure to timely issue a completeness finding harms Plaintiff Sierra Club and its members by prolonging their exposure to excess concentrations of $SO_2$

emissions in the area, diminishing their enjoyment of day-to-day activities, and by denying them measures and procedures provided under the Clean Air Act to protect their health and welfare from excess $SO_2$ pollution in and around the designated nonattainment area, where they live, work, recreate, travel, and conduct other activities.

29. EPA's failure to issue a completeness finding on the schedule mandated by the Clean Air Act further harms Plaintiff and its members by depriving them of the opportunity to review and comment on any proposed nonattainment plan, and frustrates Sierra Club's work to promote clean air and to ensure that New York submits an adequate plan that will ensure the area re-achieves attainment as expeditiously as possible.

30. EPA's failure to timely issue a completeness finding will continue to injure Plaintiff's organizational interests, as well as the concrete aesthetic, recreational, and health interests of their members, unless this Court grants the relief requested. A court order requiring EPA to promptly undertake its mandatory duty would redress these injuries.

## STATUTORY BACKGROUND

31. Congress enacted the Clean Air Act for the purpose of "protect[ing] and enhanc[ing] the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

32. The Clean Air Act establishes a comprehensive program for controlling and improving the nation's air quality. One central feature of the Act is the National Ambient Air Quality Standards ("NAAQS"), which are nationally applicable standards that EPA is required to promulgate that establish permissible concentrations of "criteria" air pollutants, including sulfur dioxide. 42 U.S.C. §§ 7408-09. Criteria pollutants are common air pollutants which EPA has specifically determined are harmful to human health and the environment. *Id.*

33. Under the Clean Air Act's scheme of cooperative federalism, each State retains "primary responsibility for assuring air quality within the entire" State, and must adopt and submit to EPA for approval a "State implementation plan," or "SIP"—a set of state laws and regulations which will "specify the manner in which" NAAQS "will be achieved and maintained within each air quality control region in such State." 42 U.S.C. § 7407(a); *see also* 42 U.S.C. § 7410. Once a SIP is approved by EPA, it is published in the Code of Federal Regulations and becomes enforceable federal law. 42 U.S.C. § 7413; 40 C.F.R § 52.23.

34. For each NAAQS, EPA is required to promulgate attainment/nonattainment designations for air quality control regions under Section 107, 42 U.S.C. § 7407 of the Clean Air Act. The Administrator is further authorized to modify or revise prior designations of an area's attainment status (after requisite notice to the state), based upon on any available information indicating that such designation should be revised. *Id.* § 7407(d).

35. Maintaining compliance with the NAAQS is crucial because they are health-based standards, and the Clean Air Act is specifically designed to ensure that states remain in attainment for each NAAQS at all times. In the event that an area slips into nonattainment with a NAAQS, the Act establishes a strict schedule of mandatory deadlines intended to force the state to ensure that said area is brought back into attainment as expeditiously as possible. *See generally* 42 U.S.C. § 7502.

36. Areas designated as nonattainment for the $SO_2$ NAAQS are subject to the general nonattainment area planning requirements of Section 172 of the CAA, 42 U.S.C. § 7502, as well as the $SO_2$-specific planning requirements of subpart 5 of part D of Title I of the CAA, 42 U.S.C. §§ 7514 and 7514a. Section 7514(a) lists the required elements that must be included in a nonattainment plan, which generally include a current emissions inventory, attainment

demonstration, reasonably available control measures and reasonably available control technology, enforceable emissions limitations and control measures, Reasonable Further Progress plan, nonattainment New Source Review program, and contingency measures.

37. All components of the $SO_2$ part D nonattainment area plan must be submitted to EPA within 18 months of the effective date of designation of an area as nonattainment, and such plan must "provide for attainment… as expeditiously as practicable but no later than 5 years from the date of the nonattainment designation." *Id.* § 7514a(a).

38. States must provide members of the public an opportunity to comment on the substance of such plans before they are submitted to EPA for review and approval. 42 U.S.C. § 7410(a)(2). EPA is separately required by the Administrative Procedure Act, 5 U.S.C. § 553 *et seq.*, to provide another opportunity for public notice and comment when it proposes to approve a nonattainment plan via rulemaking.

39. The Clean Air Act requires the Administrator of the EPA to issue a "completeness finding"—a determination regarding whether a plan or plan revision meets the minimum requirements for submissions—within 60 days of receipt, and in any case "no later than 6 months after the date, if any, by which a State is required to submit the plan or revision." *Id.* § 7410(k)(1)(B).

40. If a state has not corrected the deficiency within 18 months of a finding of failure to submit or finding of incompleteness, the Clean Air Act **requires** the Administrator to impose one of two potential sanctions identified under § 7509(b)(1)-(2)[2] upon the state until such

---

[2] The two potential sanctions available under § 7509(b) are (1) a prohibition on the approval of any projects, or the awarding of any grants, by the Secretary of Transportation in the area (highway sanctions), and (2) a requirement that for any emission offsets for new or modified sources or emission units in the affected area, "the ratio of emission reductions to increased emissions shall be at least 2 to 1." In addition to these sanctions, the Administrator "may

9

deficiency is corrected. *Id.* § 7509(a). Once the Administrator has decided to apply one of these sanctions, if the deficiency has not been corrected within six months (or if the Administrator "finds a lack of good faith"), "sanctions under both paragraph (1) and paragraph (2) of subsection (b) shall apply until the Administrator determines that the State has come into compliance." *Id.*

41. Finally, the Administrator is required to "promulgate a Federal implementation plan at any time within 2 years after" the Administrator either finds that a state has failed to make a required plan submission (or has failed to submit a plan satisfying the minimum criteria). 42 U.S.C. § 7410(c)(1).

## FACTUAL BACKGROUND

42. In June of 2010, EPA promulgated a new one-hour primary[3] $SO_2$ NAAQS of 75 parts per billion (ppb). *See* 75 Fed. Reg. 35520 (June 22, 2010).

43. EPA established this primary NAAQS based on an extensive body of scientific evidence demonstrating that short-term exposure to $SO_2$ emissions can harm the human respiratory system and make breathing difficult. *Id.* at 35525-35529. People with asthma, as well as children, are particularly sensitive to these effects of $SO_2$. *Id.* at 35525.

44. In addition to the health impacts from short-term exposure to direct $SO_2$ emissions, $SO_2$ emissions are also associated with numerous secondary harmful impacts to human health and the environment. For example, $SO_2$ can also react with other compounds in the

---

withhold all or part of the grants for support of air pollution planning and control programs that the Administrator may award under section 7405" of the CAA. *Id.*

[3] "Primary" NAAQS are the most stringent NAAQS and represent concentration levels which EPA has determined through rigorous scientific and medical review "are requisite to protect human health." 42 U.S.C § 7409(b)(1).

10

atmosphere to form small particles, and as a result $SO_2$ is one of the primary contributors to the formation of particulate matter ("PM", a mixture of solid or liquid particles that includes organic materials, metals, and ash.[4]

45.     Particulate matter is itself a designated criteria pollutant, and extensive peer-reviewed studies have demonstrated concrete links between both short- and long-term human exposure to PM to a wide array of serious health risks, including cardiovascular issues (such as irregular heartbeat, congestive heart failure and coronary heart disease, heart attacks, and strokes), acute and chronic respiratory issues (such as reduced lung function, increased asthma and allergy development rates in children, and chronic obstructive pulmonary disease), cancer, nervous system effects (neurodegeneration), and increased mortality rates, particularly in individuals with heart or lung disease. U.S. EPA, *Final Rule: Reconsideration of the National Ambient Air Quality Standards for Particulate Matter*, 89 Fed. Reg. 16202, 16224-16234 (March 6, 2024). Children, older adults, and individuals with pre-existing cardiovascular or respiratory diseases are at increased risk of PM-related health effects. *Id.* at 16234.

46.     $SO_2$ is also one of the main precursors to acid rain, *see generally* 42 U.S.C § 7651 *et seq*. (the Acid Rain Program under Title IV of the CAA), and a primary contributor to regional haze and reduced visibility. *See* EPA, Final Rule: Regional Haze Regulations, 64 Fed. Reg. 35714, 35718 (July 1, 1999) (stating sulfates are the dominant source of light extinction in the east, and one of several major sources of extinction in the west, and that regional haze trends in the eastern United States have been dominated by sulfur emission trends since the late 1940s).

---

[4] U.S. EPA. "Sulfur Dioxide Basics." Available at: https://www.epa.gov/so2-pollution/sulfur-dioxide-basics#what%20is%20so2

47. On March 26, 2021, EPA designated a portion of St. Lawrence County in New York as in nonattainment for the 2010 $SO_2$ NAAQS. *See* 86 Fed. Reg. 16055, 16068 (March 26, 2021).

48. EPA's Technical Support Document[5] for New York noted that the Alcoa Massena primary aluminum smelter, which is located in the Town of Massena and owned and operated by Alcoa Corporation, is the only source in the affected area that emits more than one ton of $SO_2$ per year, and that Alcoa Massena is the primary contributor to the NAAQS violations.

49. This nonattainment designation became effective on April 30, 2021. 86 Fed. Reg. 16055, 16068. Accordingly, New York's nonattainment area SIP plan for St. Lawrence County was due on October 31, 2022, and the Administrator was required to issue a completeness finding for this submission by May 1, 2023, the date "no later than 6 months" after the deadline by which New York was required to submit its nonattainment plan. 42 U.S.C. § 7410(k)(1)(B).

50. As of the date of this filing, New York has not issued any of the elements of its proposed nonattainment plan for notice and comment.

51. According to EPA's SPeCS Public Dashboard, which is an online dashboard that tracks required SIP plan submissions,[6] New York has not submitted any elements of its required nonattainment plan to EPA.

52. As of the date of this filing, EPA has not issued a finding that New York has failed to submit its required nonattainment plan.

---

[5] U.S. EPA. Technical Support Document: Final Round 4 Area Designations for the 2010 1-Hour $SO_2$ Primary National Ambient Air Quality Standard for New York. Available at: https://www.epa.gov/sites/default/files/2020-12/documents/06-ny-rd4_final_so2_designations_tsd.pdf

[6] Available at: https://awsedap.epa.gov/public/extensions/specs-element-dashboard/index.html

53. New York's deadline for submitting this plan passed nearly 18 months ago, and EPA's deadline for issuing a completeness finding passed almost 12 months ago.

## CLAIMS FOR RELIEF

### VIOLATION OF 42 U.S.C. § 7410(k)(1)(B)
**Failure to Perform Nondiscretionary Duty to Issue Finding of Failure to Submit**

54. Plaintiff incorporates by reference all paragraphs listed above.

55. EPA designated a portion of St. Lawrence County in New York as in nonattainment for the 2010 $SO_2$ NAAQS, and this designation became effective on April 30, 2021. 86 Fed. Reg. 16055, 16068.

56. New York's nonattainment plan for St. Lawrence County was due on October 31, 2022, the date 18 months after the effective date of the designation. 42 U.S.C. § 7514a(a).

57. The Administrator was required to issue a completeness finding for New York's nonattainment plan submission (or lack thereof) by May 1, 2023, the date six months after the deadline by which New York was required to submit its nonattainment plan. 42 U.S.C. § 7410(k)(1)(B).

58. New York has not submitted its nonattainment plan.

59. EPA has not issued a completeness finding for New York's nonattainment plan submission.

60. Therefore, EPA is in violation of its mandatory duty to issue a finding that New York has failed to submit its required nonattainment plan, which is a nondiscretionary act or duty within the meaning of 42 U.S.C. § 7604(a) of the Clean Air Act.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare that the Administrator has failed to perform his mandatory duty under the Clean Air Act to issue a completeness finding for New York's nonattainment plan submission by May 1, 2023, as required by 42 U.S.C. § 7410(k)(1)(B);

B. Order the Administrator to perform this mandatory duty immediately;

C. Retain jurisdiction over this action in order to ensure compliance with the Court's Order;

D. Award Plaintiff its reasonable costs of litigation, including attorneys' fees, related to this action; and

E. Grant any such further relief as the Court may deem just, proper, or necessary.

Respectfully submitted this the 23rd Day of April, 2024,

*s/ Sanghyun Lee*
Sanghyun Lee
DC Bar No. 1632212
Environmental Integrity Project
1000 Vermont Avenue NW, Suite 1100
Washington, DC 20005
Telephone: (202) 263-4441
Facsimile: (202) 296-8822
SLee@environmentalintegrity.org

*Counsel for Plaintiff*